## Harvey Dewey v. The City of Detroit.

*City of Detroit, liability of, for injuries resulting from defective sidewalks.* Under the charter of the city of Detroit all repairs of sidewalks are required to be made under the supervision of the street commissioners in their respective districts, and under the direction of the common council. The charter further provides that one or more commissioners may be appointed for the city.

In an action against the city for damages resulting from a defective sidewalk, it was held that the commissioner may in such matters be fairly regarded as representing the corporation. If a defect is found which he ought to have known, and which he has failed to repair within such reasonable time after such knowledge may be presumed to have reached him as, under the circumstances, was sufficient to provide for such repairing, then the city would be liable, but not otherwise.

The extent of the duty resting upon the city depends upon the means provided for its performance; and while responsible for neglect where reasonable diligence has not been exercised, it is not responsible where it is not reasonably capable of acting efficiently by its proper agencies.

*Municipal Corporation: Power of determining number of officers, discretionary.* The discretionary power under the charter of determining how many officers are required for certain duties, is one of a legislative character, which can neither be reviewed, nor made the basis of an action against the city. The number fixed must be assumed to be all that were needed for the proper care of the interests entrusted to them.

*Heard April 10th.    Decided April 16th.*

Error to Wayne Circuit.

This was an action of trespass on the case brought by plaintiff in error for damages, alleged to have been sustained from injuries received by defects in one of the sidewalks of the city of Detroit.

The only question involved is whether the circuit judge charged the jury properly, with reference to the rule concerning the negligence which would charge the city for the accident.

The facts and charges of the court are stated in the opinion. Judgment was rendered in favor of the city.

*Ward* and *Palmer*, for plaintiff in error.

1. The city of Detroit has full control over the construction and repairs of the streets and sidewalks within the city limits, to the exclusion of all individual action in

the matter, and the power to levy and enforce the collection of taxes to defray the expense thereof. The power being given, the duty to execute it follows; and for neglect in that behalf the city is liable.—*City Charter, pp.* 30–40 *and* 41; 9 *Mich.* 165; 39 *Barb.* 330; 17 *N. Y.* 105.

The city being liable for neglect, and the defect in the sidewalk not disputed, the only question raised on the trial, and reserved for the consideration of this court is, whether the defect was of such a nature that the city is liable for its existence or continuance.

The court charged the jury in substance, that the city would not be liable unless they had notice of the defect; that if any city officer had actual notice of the defect, or if it was of long standing and so open and palpable as to be apparent and necessarily attract the attention of passers by, that notice might be inferred, and the city would be liable.

Two classes of defects may exist — one arising from the improper construction of the way, or neglect in taking care of it and making necessary repairs — and the other from accident or from agencies not under the control of the party liable to maintain and keep the way in a proper condition.

When a flood washes away a bridge or other part of a highway or a tornado blows trees across it, or individuals place obstructions in it or make unauthorized excavations, the city, town, or county can not be considered in fault until they have had notice of the defect, or time by reasonable diligence to find it out and repair the injury.— 35 *N. H.* 74, 52; 40 *Id.* 410; 41 *Id.* 135; 43 *Id.* 265; 27 *Conn.* 293; 13 *Pick.* 94.

But when the way gets out of repair, from defective construction, or from ordinary use or wear and decay of the same, or from causes constantly existing and apparent, then the defect arises from culpable inattention to duty,

and no notice is necessary to establish the neglect.—39 *Barb.* 330; 2 *Hilton*, 440.

In this case no proper drains were constructed under the walk to conduct away the water from the lots adjoining it—and so defective was it in this respect, as shown by the witness, Lacroix, that the walk was frequently afloat on the water accumulating under it, and moved up and down as people walked over it, so as to cause the planks to work loose, and at the point of the accident where a small drain was dug under it from the penstock, it was covered with an oak plank, a kind of timber most liable to warp and twist, and draw out the nails with which it was fastened from the effect of being constantly soaked on the under side and exposed to the sun on the top.

The rule of law laid down by the court though the same as enunciated in three or four exceptional cases, (see 36 Barb. 226, which is in effect overruled in 39 Barb. p. 329; 5 Bosw. p. 497, where one of the judges dissented,) is not based on any recognized principle of law, and does not accord with the general current of decisions.

Paid agents must in all cases exercise care and diligence in the discharge of their duties.

The city of Detroit, for a consideration, that is the grant of power contained in its charter, undertakes to construct and maintain in proper condition its public ways, and imposes the expense of doing it on the public, as also the expense of paying two officers, the street commissioner and overseer of highways, for taking charge of them and seeing that all necessary repairs are made. The law, as laid down by the court, would relieve those officers as well as the city which is responsible for them, of all diligence in the matter. They can wait until some indifferent person assumes the duty of bringing notice to them, or if no person chooses to take that trouble, then until the want

of repair becomes so notorious that they ought to hear of it from common report.—16 *N. Y.* 161.

Neither, in cases where notice to the corporation is required, is it necessary that it should be brought home to a city officer. It is enough if it is known to inhabitants of the town or city, and has often been so held under statutes requiring it to be given.—7 *Me.* 442; 32 *Id.* 271; 40 *Id.* 176; 1 *Mass.* 153.

2. The question of negligence and whether the defect arose from the imperfect construction of the walk, or from causes which were apparent and might easily have been seen and guarded against, and if not, whether it was such that the city officers might with reasonable diligence have found it out and repaired it, should have been left to the jury instead of being virtually withdrawn from their consideration, as was done by the court.—35 *N. H.* 74; 40 *Id.* 410; 41 *Id.* 135; 13 *Pick.* 94.

The matter of diligence or neglect in such cases can not be reduced to a rule of law, as too great a diversity of circumstances exists in each case to permit it. A walk which would be sufficient in a remote part of the city, would be wholly unfit and unsuitable to be built in a central and frequented part.

And in proportion as the walk is central and much used, would the facilities be increased of finding out and repairing its defects. So that what might be diligence in one case would be gross neglect in the other.

*Wm. Gray,* for defendant in error.

1. The testimony was properly excluded. The state of the sidewalk three months after the accident was immaterial. It could have no tendency to show its condition at the time of the injury for the alleged defect — a loose plank might happen any day. The evidence showed it was frequently taken up and nailed down again. All evidence as to the condition of the walk at and about the

time of the accident was received. The evidence offered could only be intended to prejudice defendants, by claiming subsequent negligence, which was immaterial. It would be as competent to show defective walks in other parts of the city. The farthest that the cases go, is that the admission or rejection of such evidence was in the discretion of the court, and the ruling will not be reviewed.—43 *N. H.* 356; 7 *Gray*, 92; 11 *Wis.* 160, 175.

Error will not lie as to any matter addressed to the discretion of the court. — 12 *Mich.* 449, 368.

2. There was no proof that the defect, if any, was caused by persons in the employ of the defendants.

It would be error to give a charge, there being no evidence on which to found it. — 5 *Mich.* 368, 380.

The other charges, asked by plaintiff, were given.

The charge of the court was correct.

The court did, in effect, charge that if any city officer had notice, or if the defect was of such character or long continuance as to naturally or necessarily attract the attention of passers by, notice might be presumed.

This is in strict accordance with adjudicated cases. — 36 *Barb.* 226; 5 *Bosw.* 497; 5 *Selden*, 456.

In determining whether there was error or not, the court will look at the entire charge, and say how the jury must have understood it. — 3 *Mich.* 55; 13 *Id.* 70.

CAMPBELL J.

Plaintiff sued the City of Detroit for personal damages, caused by his being tripped up by a loose board in a sidewalk. The injury is said to have occurred by reason of the plank being raised suddenly by a person stepping upon an end of it, so that Dewey, when passing, caught his foot under it as it was so raised, and was thrown down. The only question presented for review is, whether the circuit judge laid down a proper rule concerning the negligence which would charge the City for the accident. The

charge was as follows: "That the City would be liable if they had notice of the defect; that actual notice need not be shown, but might be presumed or inferred, if the defect was open and notorious, or of long standing, and of such a character as would naturally arrest the attention of persons passing it. If the jury found that any city officer had actual notice of the defect, or that it was of such a character that notice might be inferred, the city would be liable, unless it should appear that the plaintiff was himself negligent, and by his own neglect contributed to the accident." In answer to a special request, the court charged "That in the absence of proof of express notice to the defendant of the defect which was the alleged cause of the injuries received by the plaintiff, the plaintiff can not recover unless the jury finds that such defect was so open and palpable as to be apparent, and necessarily attract the attention of passers by."

This action is based upon a supposed neglect of duty to repair defects in the city sidewalks. How far this duty lies upon the city depends of course upon its charter, and upon the means provided by that charter to enable it to perform this duty. It can not be liable for neglect, in any case where it is not reasonably capable of acting efficiently; and, on the other hand, it is responsible for reasonable diligence in the performance of any duty which it is capable of performing, so far as the means in its power will enable it to act.

Under the charter all repairs of sidewalks are required to be made under the supervision of the street commissioners in their respective districts, and under the direction of the Common Council. — *Charter, Chap.* 4, § 16. There may be one or more commissioners for the city. — *Chap.* 2, § 2. The nature of their duties would preclude the appointment of any considerable number of these officers, as their functions in supervising various improvements must of necessity give them jurisdiction

over different wards, and the ward overseers are subject to their oversight, and must act under their direction — *Chap.* 2, § 17. It appears from the case that one commissioner is appointed over the entire eastern part of the city, from Woodward Avenue to its eastern limits, except a portion of the Second Ward.

It is very well settled that the discretionary power of determining how many officers are required is one of a legislative character, which can neither be reviewed nor made the basis of complaint against the city. — *Griffin v. Mayor of N. Y.* 9 *N. Y. Rep.* 456. It must be assumed that there were adequate reasons for fixing the number adopted. And any rule which would hold this officer, and the city through him, for neglect, must have respect to such facilities as he may be fairly supposed to possess, to inform himself of defects in the walks, and to attend to their repair.

It is clear that he can only get knowledge from his own observation, or from information laid before him; and that neither he nor any one else can be expected to ascertain without information the existence of defects which are not apparent to every ordinary observer. The walks in a city of the size of Detroit cover many scores, and probably several hundreds of miles, and unless an injury is such as to be very readily noticed, it would be altogether unlikely to attract attention, or to be reported to him by private parties. That minute daily inspection which is possible and necessary on a line of railroad, where a small break may endanger hundreds of lives, would be absurd and impracticable in relation to sidewalks. A city, responsible as it must be only for the neglect of duties incumbent on its agents, can not be distinguished in its liabilities from individuals who might be entrusted with the same kind of duties. In this case the commissioner may be fairly regarded as representing the corporation. If a defect is found which he

15 Mich. — v.

ought to have known, and which he has failed to repair within such reasonable time after such knowledge may be presumed to have reached him as under all the circumstances was sufficient to provide for such repairing, then there is a good cause of action, but not otherwise.

The ruling of the court below went far enough to hold the city responsible for any defect which was known to any city officer whatever, whether connected with the street department or not, or which was generally known, or which was apparent to ordinary observers. It would be assuming too much to suppose the city authorities can be in fault for being ignorant of what they could not learn in one of these ways; and to hold them further, we must expect them to possess some faculties in their corporate nature which are denied to natural persons. The charge was sufficiently liberal to the plaintiff, and the judgment should be affirmed with costs.

COOLEY J. and MARTIN Ch. J. concurred.

CHRISTIANCY J. did not sit in this case.