JAMES CUNNINGHAM, Appellee, v. ADAIR COUNTY, Appellant.

**COUNTIES:** Highways—Neglect In Re Permanent Culverts. A county is not liable in damages for the neglect or failure of its board of supervisors to construct or maintain *permanent* culverts,—viz., culverts which, under the regulations of the state highway commission, are of a diameter of 36 inches and over. Especially is this true when the culvert in question was on a township road, and the negligence consisted in a failure to *remove* an existing township culvert and

*replace* it with a permanent county culvert.   (Sec. 1527-s8, Code Suppl. Supp., 1915.)

*Appeal from Adair District Court.*—J. H. APPLEGATE, Judge.

FEBRUARY 8, 1921.

ACTION for damages to plaintiff's tractor, resulting thereto from an alleged defective bridge or culvert.   There was a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*D. A. Crowley,* County Attorney, and *Frank B. Wilson,* for appellant.

*O. W. Withem* and *George B. Lynch,* for appellee.

EVANS, C. J.—I.   The defendant is a county.   The plaintiff was operating his tractor upon a township road, and undertook to cross over a temporary culvert thereon.   ·The culvert broke, under the weight of the tractor, with resulting damage. Section 1527-s8, as amended by the thirty-sixth general assembly, Code Supplemental Supplement, 1915, is as follows:

"The duty to construct and maintain all bridges and *permanent* culverts throughout the county is imposed upon the board of supervisors.   All culverts and bridges shall be paid for out of the county bridge fund, except as provided in Section thirteen of this act.   Where conditions are such as to warrant or necessitate the same, the board of supervisors shall furnish township trustees metal or other *temporary* culverts authorized by the state highway commission to be placed by them on their township road system."

By regulation of the highway commission, *temporary* culverts are those confined to a diameter not exceeding 36 inches. *Permanent* culverts are such as are in excess of such diameter. Expert evidence was introduced by plaintiff to the effect that the quantity of drainage through such culvert would require a structure 42 inches in diameter.   The case was tried and submitted on the theory that, under the statute above quoted, it was the duty of the county to construct and maintain such a

culvert at the place of the accident, and that it was liable for damages for negligence in respect thereto. Though we have always held heretofore that a county was not liable for damages for the neglect of its officers in the maintenance of public structures, except as pertaining to county bridges, and though the culvert in question was not a county bridge, within the former definition thereof, yet it is claimed that the effect of the more recent road legislation has been to enlarge the definition of a county bridge, and to include therein all bridges and culverts within the county which exceed a diameter or span of 36 inches. The case was submitted below on the theory that the field of the liability of the county for damages was coextensive with the field of duty of the board of supervisors. We held to the contrary in *Snethen v. Harrison County*, 172 Iowa 81, and in *Armstrong v. Harrison County*, (Iowa) 172 N. W. 953 (not officially reported). The general legal proposition that the field of duty and the field of liability are coextensive is not applicable to county liability. The restricted liability of the county is an exception to the general rule applicable to persons and strict corporations. The reason for this distinction is that a county is a governmental organization, and that the duties of its supervisors are governmental. Even its organization as a corporate entity is legislative, and not voluntary. It is a part of the political organization of the state. On principle, it could not be held liable for damages at all for breach of official duty by its officers. However, in *Wilson & Gustin v. Jefferson County*, 13 Iowa 181, it was held by this court that a county was liable for defects in a county bridge. It was soon recognized by the court that such holding lacked support in authority, and was unsound in principle. This recognition of the error was repeatedly announced in subsequent opinions. But the holding itself was adhered to empirically on the ground of *stare decisis*. *Packard v. Voltz*, 94 Iowa 277; *Green v. Harrison County*, 61 Iowa 311. The result is that, in obedience to this first precedent, this court has sustained the liability of the county for negligence in the maintenance of so-called "*county bridges*," but has refused to extend such rule of liability to any other form of negligence. It has repeatedly recognized the principle and the common-law authority that a county cannot be held liable for damages for

failure of duty of its public officers, in the absence of legislation creating such liability; but it has recognized the one exception to the rule, as made by the *Wilson* case, supra, and has done so professedly in obedience to the rule of *stare decisis*. In another division of this opinion, we shall set forth excerpts from the previous opinions of this court which indicate the consistency and persistency with which this court has guarded the general principle and has refused to extend the exception. We have repeatedly announced that the rule of liability cannot be extended, except by direct legislation to that effect. It is now contended that the later legislation which increases the duties of the board of supervisors is the equivalent of legislation creating corresponding liability. But it is such by implication only, and such implication has been repeatedly denied by this court in the consideration of previous litigation. We have repeatedly refused to consider an open ditch or a defective culvert as the equivalent of a county bridge, within the meaning of the opinion in the *Wilson* case. In *Snethen v. Harrison County*, supra, and in *Armstrong v. Harrison County*, supra, we expressly held that the liability of a county for alleged negligence was confined to a "county bridge," *as the same was defined prior to the enactment of Section 1527-s8*, Supplemental Supplement, 1915. And this means a 40-foot bridge.

II.    For convenience of reference, we devote this division of the opinion to excerpts from the opinions in our previous cases, as indicating the judicial history of the question here presented. From *Packard v. Voltz,* 94 Iowa 277:

"The work done on the highway was in pursuance of this provision, and we are to determine whether or not, in the doing of such work, the county is liable for the negligence of its agents or employees. We think the holdings of this court, upon analogous facts, are decisive of the question. But for the rule announced in *Wilson v. Jefferson County,* 13 Iowa 181, and the cases adhering to it, the one now contended for would have no authoritative support in this state. The rule of that case has been doubted, and the doubt, on common-law authority, has recognition in the holding of this court. In *Kincaid v. Hardin County,* 53 Iowa 430, speaking of that case, and of its standing 'almost, if not quite, alone,' support is given to the holding be-

cause of its existence for so long a time as to 'have the implied sanction of the lawmaking power and the people of the state;' and it is there said that 'we have no disposition to carry the doctrine further than to sustain the decisions of the court.' The case of *Green v. Harrison County*, 61 Iowa 311, was to recover damages because of the negligent construction of a ditch by the county, resulting in damage to plaintiff. The case distinguishes the *Kincaid* case from the line of bridge cases, and follows it. The *Green* case is quite significant as authority in this case because of its application being peculiarly local, which is a reason urged in this case to distinguish it from the rule of the *Kincaid* case, where the duty performed was the construction of a courthouse, and importance was attached to the mandatory character of the duty on the part of the board of supervisors.''

From *Snethen v. Harrison County*, 172 Iowa 81:

''Counties, unlike cities and incorporated towns, are not, as a rule, held liable for torts committed by them, so long as they are acting within the scope of their governmental powers. They are quasi municipal corporations, engaged in the performance of governmental functions, and are not responsible for the neglect of duties enjoined upon them, in the absence of statute giving a right of action. * · * *   The defendant county was in the exercise of its powers upon the road in question, and it must be assumed that its board or employees, or both, were extremely negligent in leaving the dangerous place in the road. But they had not constructed a bridge at the point of the accident, so plaintiff's intestate was not injured by reason of a defective bridge. True, the board was bound to construct a bridge at the place where the accident occurred, and was given a fund with which to do it and to keep the structure in repair. It was also authorized to construct the road, and doubtless to keep it in repair. But there is nothing in the statute anywhere which indicates any intention on the part of the legislature to impose any liability upon the county for negligence on its part in the doing of its work. Appellant contends, however, that the county should be held liable on the same theory that it is responsible for the construction, maintenance, and repair of county bridges; and it must be confessed that the analogy is quite close. But this court, in adopting the rule of liability for defective

bridges, did not follow the general rule then existing in other jurisdictions, and has, since its adoption, persistently and consistently refused to enlarge the same. See cases hitherto cited. It has refused to apply it to county jails and courthouses, to ditches and drains constructed by legislative authority, and to the care of paupers and insane; and it may well be affirmed that county bridges constitute the only exception in this state to the rule of nonliability."

See, also, *Soper v. Henry County*, 26 Iowa 264.

III. There is a further reason why the judgment below cannot stand. The road in question was a township road, and not a county highway. The culvert in question was a wooden one, which had been constructed by the township some years before. The county supervisors had never exercised any supervision over the culvert or over the highway upon which it was laid. The culvert had been constructed by the township trustees before the enactment of Section 1527-s8, above quoted. Nothing had ever been done upon this township road, pursuant to this statute. The culvert was a mere drain from a watershed of 240 acres. Expert evidence was introduced to the effect that such drainage would require a culvert 42 inches in diameter. If such a culvert were constructed, it would come within the scope of duty of the board of supervisors, and would be deemed a *permanent* culvert, within the meaning of the statute. But no such culvert had been constructed. The court instructed the jury, in substance, that, if the old culvert was defective and unsafe, and if the flow of water would require a culvert in excess of 36 inches in diameter, then it was the duty of the board of supervisors to construct such culvert, and that the failure of the supervisors to so construct such culvert would render the county liable for negligent maintenance of the old culvert. The effect of this holding was to say that the enactment of the statute which put the construction and maintenance of bridges and permanent culverts within the scope of the duty of the supervisors created forthwith a liability upon the county for negligent maintenance as to every culvert on every township road in the county, if the place thereof should ultimately require for drainage purposes a culvert in excess of 36 inches. The proposition cannot be sustained. It is clearly opposed to

our holding in the *Snethen* and *Armstrong* cases, supra. Even in obedience to the decision in the *Wilson* case, we have never held a county liable for failure to erect a county bridge. No contention to that effect has ever been presented to us. The existence of a county bridge in some form has been a condition precedent to any liability of the county for negligence. Its liability has always been predicated upon negligence, either in the construction or in the maintenance of an actual county bridge. Speaking by analogy, the liability of the county, if liability there was, for negligent construction or maintenance of a permanent culvert, could only arise *after* the permanent culvert was undertaken or constructed. For the reasons indicated, the judgment below must be, and is,—*Reversed*.

WEAVER, PRESTON, and DE GRAFF, JJ., concur.